## NEW YORK TRAP ROCK CORPORATION v. The DYNAMIC et al.

### THE E. B. KARR.

#### No. 16314.

District Court, E. D. New York.
Dec. 1, 1942.

Hagen & Eidenbach and Henry C. Eidenbach, all of New York City, for libellant.

Mahar & Mason and Frank C. Mason, all of New York City, for claimant.

CAMPBELL, District Judge.

About 6 o'clock A.M. on March 18, 1941, the libellant's scow E. B. Karr, laden with about 675 yards of 3/4 inch size of broken stone, known as trap rock loaded to a draft of about 9 to 9½ feet, consigned to City Construction Company, New Brunswick, New Jersey, was taken in tow astern on two short hawsers, about 25 feet from tug to scow, by the claimant's Diesel tug Dynamic, which then proceeded through the Kills, and into the Raritan River.

The wind was blowing strongly from the West, later the Northwest, and blowing down the water.

After passing under the first bridge and before passing Marsh Point, and some time before arriving at the U. S. Arsenal Dock, the Dynamic and her tow had passed without incident a hydraulic dredge operated by private parties.

The Master of the Dynamic knew that with a wind of high velocity from the Northwest the water would be too low to get his tow to her destination, and about 8 o'clock a.m., the Dynamic with her tow tied up at the Government Arsenal Dock on the Raritan River, where there was a spile with markings, showing the height of the water, from which he could determine when he had sufficient water to proceed.

Somewhat beyond the Government Arsenal Dock, and a little to the starboard of the middle of the river, as the Dynamic was proceeding, a U. S. Government hydraulic dredge, the C. P. Clark, was working.

The Dynamic, with her tow, got under way from the Arsenal dock about 10 o'clock a.m. bound up the Raritan River for New Brunswick, and as she was leaving reduced the towing hawsers to 15 feet. When above the arsenal dock, the Dynamic and

508

her tow passed the Government Dredge C. P. Clark about 50 or 60 feet off, and when the Karr was about 150 feet beyond the dredge she grounded. The bottom of the river at that point was muddy with piles of oyster shells and some stumps thereon and therein.

The Karr remained there for over one-half hour during which time the Dynamic was attempting to pull the Karr ahead and off. After releasing the Karr from the ground, the Dynamic proceeded with the Karr in tow, the Northwest wind increasing in velocity to about 45 miles an hour, off Rocky Reach, and again, about 12:15 p.m., the Karr grounded, but did not remain aground for any length of time. The Dynamic and her tow proceeded, and when they arrived at the dock at New Brunswick, at about 2:15 p.m., the Dynamic put the bow of the Karr into the dock, but found that she could not put the stern of the Karr into the dock, and on request the man operating the crane on the dock took off about seven buckets of stone, and the stern of the Karr was pushed by the Dynamic into the dock. During the balance of that day about 275 yards of stone were removed, and during the course of the next two days the balance of the stone was unloaded from the scow.

On behalf of claimant, it is contended that the scow Karr was not grounded, after passing the dredge, but, if it did touch the ground it was only the starboard side of the stern corner that touched, and that the damages to the Karr, of which complaint is made in this suit, could not have been caused by such a grounding.

That contention is not sustained.

That the scow Karr did ground, and that the tug Dynamic did pull her off, is shown by the testimony of the witness David Mair, an inspector of the United States Engineers, who was then stationed on the Government dredge C. P. Clark, which was then operating in the Raritan River above the Government Arsenal Dock. It was also shown by the testimony of the same witness, that at the time of such grounding, the tug Dynamic was definitely outside of the channel.

The witness Mair was a disinterested witness, and his testimony is entitled to, and has received, marked consideration.

It is to be observed that the Captain of the scow Karr testified that the tug Dynamic pulled his scow ahead, from side to side, off the ground, and this also finds corroboration in the testimony of the witness Mair, who said he saw the tug Dynamic pulling and stirring up mud, and he thought they were both aground.

The Captain of the scow Karr says that she commenced to leak immediately after she was released from the ground, and that he was compelled to pump, and tried to give to the Master of the Dynamic, who was some distance ahead, notice of the leaking condition of the scow after grounding, but apparently without success, as he received no assistance, and the Master of the Dynamic says he was not notified.

The removal of about seven buckets of stone was sufficient to, and it did, permit the pushing in of the stern of the scow to the dock.

The Captain of the scow Karr says, that she did not rest on the bottom at any time, while at the dock in question at New Brunswick, and I am convinced that he is telling the truth, because it appears from the testimony that there were removed on the days in question from said scow, about 275 yards of stone, more than one-third of her cargo, and with that amount removed, she would not rest on the bottom as shown by the sounding, in evidence.

The damage to the bottom of the Karr, as shown when she was on the railway of the yard at Newburgh, started in on the port bow and was like scratches about as wide as your finger, and about a quarter of an inch deep. The scratches ran here and there all the way of the bottom of the boat to the other end, and in the middle of the bottom, in the fifth or sixth bay, right underneath the center stringer, there were six planks broken through and gouged. This indicates a drawing of the scow over a hard rough bottom, and resting for some time on a hard spot where the planks were broken. This occurred on the first grounding, not at the City Construction Company's Dock at New Brunswick.

The grounding of the scow, while in tow of the tug Dynamic, creates a presumption of fault on the part of the tug Dynamic, and that presumption has been sustained.

The testimony of the Captain of the Karr is corroborated by the other witnesses called on behalf of libellant, and the surrounding circumstances.

The testimony of the Master of the Dynamic, however honest he may be, and I do not question his honest belief in the

story he told, is not in harmony with the surrounding circumstances, and I am convinced that he erred in denying that the Karr grounded and contending that she merely struck, and in denying that he pulled her off after she had been aground for more than a half hour.

I also am convinced that he erred when he said that on request from the men on the dock he deliberately pushed the stern of the Karr in on a bad hard bottom.

A decree should be entered in favor of the libellant against the Diesel tug Dynamic with costs, and the usual order of reference.

Settle decree on notice.